698 S.E.2d 79 (2010)
In the Matter of D.W.C. and J.A.C.
No. COA10-250.
Court of Appeals of North Carolina.
July 6, 2010.
*80 Charles E. Wilson, Jr., for Cleveland County Department of Social Services petitioner-appellee.
Janet K. Ledbetter, Hillsborough, for respondent-appellant.
Pamela Newell for Guardian ad Litem.
HUNTER, JR., ROBERT N., Judge.

BACKGROUND
Respondent-mother ("Eloise")[1] appeals from the trial court's order terminating her parental rights to the minor children, D.W.C. ("Donnie") and J.A.C. ("Johnnie").
On 8 May 2008, Cleveland County Department of Social Services ("CCDSS") filed a juvenile petition alleging that Donnie and Johnnie were neglected juveniles, in that they lived in an environment injurious to their welfare. The petition was a response to an incident taking place on 5 May 2008, where police responded to a domestic violence call alleging that respondent-father ("Edward") and Eloise were abusing alcohol and becoming physically and verbally violent with the minor children in the home. During the incident, Edward was arrested for assault on a female and resisting a public officer. The minor children were one and three years old at the time. The petition filed by CCDSS alleged that the minor children were exposed to domestic violence, substance abuse, and improper supervision in their home.
A kinship care agreement was formed with the maternal grandmother to ensure the safety of the children. Eloise obtained a restraining order to ensure her and the children's safety following the incident on 5 May 2008. However, Eloise dropped the restraining order and married Edward on 6 May 2008 in Rutherford County. The maternal grandmother thereafter advised CCDSS that she could no longer provide care for the children, and asked that an alternative placement *81 be found. CCDSS obtained non-secure custody of the children on 8 May 2008.
At an adjudication hearing on 21 May 2008, Eloise and Edward stipulated that Donnie and Johnnie were neglected. The trial court entered an order adjudicating the children neglected juveniles on 2 July 2008.
On 20 May 2009, CCDSS filed petitions to terminate Eloise and Edward's parental rights. CCDSS alleged that grounds existed to terminate parental rights because: (1) Eloise and Edward had neglected the children; (2) Eloise and Edward had willfully left the children in foster care for more than twelve months without showing reasonable progress; and (3) Eloise and Edward had willfully failed to pay a reasonable portion of the cost of care for the juveniles although physically and financially able to do so. The termination of parental rights hearing was held on 16 December 2009. On 15 January 2010, the trial court entered an order terminating Eloise's and Edward's parental rights. Only Eloise appeals.

ANALYSIS

I.
Eloise argues that the trial court's order terminating her parental rights must be reversed because the trial court failed to enter an order appointing a guardian ad litem ("GAL") for the children: (1) when the petition alleging neglect was filed on 8 May 2008, and (2) when Eloise answered the petition to terminate her parental rights. We disagree.
As a preliminary matter, we note that Eloise has filed a notice of appeal only to the trial court's 15 January 2010 order terminating her parental rights, and accordingly this order is the only order properly before this Court for appellate review. N.C.R.App. P. 3.1(a) (2010) ("[E]xcept as hereinafter provided by this rule, all other existing Rules of Appellate Procedure shall remain applicable."); N.C.R.App. P. 3(d) (2010) ("The notice of appeal ... shall designate the judgment or order from which appeal is taken and the court to which appeal is taken[.]"); see In re L.B., 187 N.C.App. 326, 332, 653 S.E.2d 240, 244 (2007) (Rule 3.1 is "jurisdictional, and if not complied with, the appeal must be dismissed."), aff'd, 362 N.C. 507, 666 S.E.2d 751 (2008). Therefore, Eloise's first argument that a GAL should have been appointed when the petition alleging neglect was filed in May 2008 is dismissed. In re N.B., ___ N.C.App. ___, ___, 688 S.E.2d 713, 717 (2009) ("We find that any alleged violation of N.C. Gen. Stat. § 7B-601(a) (2007), with respect to the prior termination hearings, may not be used to challenge the [order terminating parental rights].").
As to Eloise's second argument that a GAL should have been appointed when she answered the petition to terminate her parental rights, section 7B-1108 of our General Statutes provides that "[i]f an answer or response denies any material allegation of the petition or motion, the court shall appoint a guardian ad litem for the juvenile to represent the best interests of the juvenile, unless... a guardian ad litem has already been appointed pursuant to G.S. 7B-601." N.C. Gen.Stat. § 7B-1108(b) (2009). However, even though appointment of a GAL is mandatory by statute in this situation, this Court has held that "failure of the record to disclose guardian ad litem appointment papers does not necessitate reversal of the district court's decision," when the guardian ad litem has carried out her duties under N.C. Gen. Stat. § 7B-601(a). In re A.D.L., 169 N.C.App. 701, 707, 612 S.E.2d 639, 643 (2005).
In In re J.E., 362 N.C. 168, 655 S.E.2d 831 (2008), our Supreme Court overturned a decision by this Court where we reversed an order terminating parental rights based on the holding in In re R.A.H., 171 N.C.App. 427, 614 S.E.2d 382 (2005). The dissent from this Court, adopted by the Supreme Court, distinguished R.A.H.:
This Court in In re R.A.H., 171 N.C.App. 427, 614 S.E.2d 382 (2005), held that prejudice will be presumed where "a child was not represented by a[GAL] at a critical stage of the termination proceedings." Id. at 431, 614 S.E.2d at 385. In that case, the child was not represented by a GAL during the first three and a half days of a termination hearing and the mother's parental rights were terminated. *82 Id. at 430, 614 S.E.2d at 384. The mother then appealed "[f]rom the order terminating her parental rights" to the child. Id. at 428, 614 S.E.2d at 383.
In the instant case, respondent is also appealing the order terminating her parental rights. Unlike respondent in In re R.A.H., however, respondent in this case points to the children's lack of representation at prior hearings, to which she did not object nor later appeal, as grounds to overturn the trial court's termination order. Unlike the child in In re R.A.H., the children in this case were represented at every stage of the termination hearing.
....
[T]he trial court's order should be affirmed because the prior orders in which the children were purportedly unrepresented are not on appeal before this Court and because a GAL represented the children during the entire termination proceeding. Thus, because it cannot be said that the children were unrepresented during a "critical stage" of the termination hearing, I would affirm the trial court as to this issue.
In re J.E., 183 N.C.App. 217, 228-29, 644 S.E.2d 28, 34-35 (2007), rev'd, 362 N.C. 168, 655 S.E.2d 831 (2008). In J.E., a GAL was present in the courtroom during the termination of parental rights proceedings on behalf of the minor children. Id. at 227, 644 S.E.2d at 34.
In this case, the same situation as J.E. is present, and Eloise's reliance on R.A.H. is similarly misplaced. The record here shows that a GAL report was filed recommending the termination of Eloise's parental rights, and the trial court specifically found that a GAL attended the termination of parental rights hearing on the minor children's behalf.
[T]he Guardian ad Litem of the juveniles is Betsy Sorrell, District Administrator for the Guardian ad Litem Program, 27-B Judicial District. She is present in court today, and the juveniles and the Guardian ad Litem are represented by the attorney advocate for the Guardian ad Litem program.
Under J.E., it is apparent that the GAL performed its statutory duties under N.C.G.S. § 7B-601 in this case, and we conclude that the minor children were properly represented at all critical stages, including the termination of parental rights hearing. This argument is overruled.

II.
Eloise also claims that the trial court abused its discretion when it concluded that terminating her parental rights was in the minor children's best interests because there was insufficient evidence to address N.C. Gen.Stat. § 7B-1110(a)(5) (2009).[2] We disagree.
Once the trial court has determined that a ground for termination exists, the court moves on to the disposition stage, where it must determine whether termination is in the best interest of the child. N.C. Gen.Stat. § 7B-1110(a). The determination of whether termination is in the best interests of the minor child is governed by N.C. Gen.Stat. § 7B-1110, which states that the trial court shall consider the following factors:
(1) The age of the juvenile.
(2) The likelihood of adoption of the juvenile.
(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
(4) The bond between the juvenile and the parent.
(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
(6) Any relevant consideration.
N.C. Gen.Stat. § 7B-1110(a). "We review the trial court's decision to terminate parental rights for abuse of discretion." In re Anderson, 151 N.C.App. 94, 98, 564 S.E.2d *83 599, 602 (2002). The trial court is "subject to reversal for abuse of discretion only upon a showing ... that the challenged actions are manifestly unsupported by reason." Clark v. Clark, 301 N.C. 123, 129, 271 S.E.2d 58, 63 (1980).
In its order, the trial court found:
102. That [Donnie] is now 5 years old.
103. That [Johnnie] is now 2 years old.
....
105. That the juveniles are placed together in a licensed family foster home. The juveniles have been in this foster home since April 2009.
106. That the social worker has observed the juveniles in the home and care of the foster parents and observed the juveniles and foster parents to be very bonded. The children refer to the foster parents as "mom" and "dad."
107. That the social worker has also observed the weekly visitation between the juveniles and [Edward] and [Eloise] and also observes the children to be bonded to their parents.
108. That the current foster parents of the juveniles are interested in adopting the juveniles. As licensed foster parents, there are no known barriers to their approval by the Cleveland County Department of Social Services as an adoptive placement.
....
110. That as of the date of this hearing, neither [Eloise] nor [Edward] are able to provide a safe or stable home environment for the juveniles.
....
112. That although [Eloise] has completed some court-ordered services, she has failed to make sufficient progress under the circumstances in the past 20 months to warrant the continuation of the juveniles in foster care for an indefinite period of time.
....
114. That the Court has sanctioned a permanent plan of adoption as in the best interest of the juveniles, and the termination of the parental rights of [Edward] and [Eloise] would aid in the accomplishment of that permanent plan.
These findings show that the trial court properly considered the statutory factors, and did not abuse its discretion in terminating Eloise's parental rights. Accordingly, the order of the trial court must be
Affirmed.
Judges WYNN and ELMORE concur.
Report per Rule 30(e).
NOTES
[1] Pseudonyms will be used throughout the remainder of this opinion for ease of reading and to protect the privacy of the children.
[2] In her argument in this section, Eloise reiterates her objections concerning the representation of the minor children's GAL at the termination hearing. Since we have already concluded that the duties outlined in section 7B-601 were satisfied by the minor children's GAL under J.E., we do not address Eloise's corollary argument that the GAL in this case was required to put on any further evidence at the hearing.